# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: A.H.

No. 17-0816 (Wayne County 17-JA-057)

**FILED**

**January 8, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother N.H., by counsel Michael A. Meadows, appeals the Circuit Court of Wayne County's August 10, 2017, order terminating her parental rights to A.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Melia Atwell Adkins, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2017, the DHHR filed an abuse and neglect petition against petitioner and A.H.'s father. The DHHR alleged that at the child's birth, both petitioner and the child tested positive for marijuana. The DHHR alleged that petitioner had a history of drug abuse, which led to the involuntary termination of her parental rights to two older children in January of 2016. The DHHR noted that she was not successful in the numerous times she attempted substance abuse treatment and could not maintain sobriety. The DHHR alleged that A.H. was petitioner's second child to be born "drug exposed" and that petitioner reported a ten-year-long addiction to opiates and other drugs, including use of heroin, Suboxone, and marijuana. Further, petitioner and the father lived in a recreational vehicle ("RV") next to the father's mother's home. An extension cord connected to the home provided electricity for the RV, but the parents had to go into her house to use the kitchen or bathroom and to obtain water. The DHHR alleged aggravated circumstances existed due to the prior involuntary termination of petitioner's parental rights to two older children and that impending and present dangers existed as a result of one or both

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

caregivers' lack of parenting knowledge, skills, or motivation which affected child safety; that the caregivers' drug and/or alcohol abuse was pervasive and threatened child safety; and, that one or both caregivers could not control their behavior. Later in May, petitioner and the father waived their preliminary hearing.

The circuit court held an adjudicatory hearing in June of 2017. Petitioner was not present but was represented by counsel. According to petitioner's counsel, petitioner was attending a medical appointment and the father, who was also absent, had chosen to drive her to the appointment. The circuit court denied the parents' motions to continue and heard evidence. The circuit court found that petitioner had not been in contact with the social worker since the preliminary hearing, failed to appear at a scheduled multidisciplinary team ("MDT") meeting, failed to obtain random drug screens, and did not participate in supervised visits with the child. Further, the circuit court found that there was clear and convincing evidence that the child was abused and neglected by the parents based upon their substance abuse issues, by the child being born addicted to drugs, and by the parents' failure to cooperate with the DHHR. Accordingly, the circuit court adjudicated petitioner as an abusing parent and rescinded supervised visits until she made an appearance before the circuit court and cooperated with the DHHR.

In August of 2017, the circuit court held a dispositional hearing. Petitioner requested a post-adjudicatory improvement period and testified that she had missed the adjudicatory hearing because her primary care physician referred her to a specialist for pain in her hands. Petitioner stated that the test she underwent on the day of the adjudicatory hearing revealed that she had carpal tunnel syndrome. When asked why she had not been in contact with the CPS worker, petitioner testified that she had tried to make a few telephone calls, but experienced difficulty contacting someone when their CPS worker was changed. Further, petitioner also alleged that the new CPS worker had the wrong phone number for petitioner and the father. However, on cross-examination, petitioner admitted that she had been in and out of town working on construction jobs. Despite testing positive for marijuana immediately prior to the hearing, petitioner stated that she did not test positive for opiates, as she did at her first hearing, because the marijuana was helping her "come off" the other drugs. Petitioner testified that she wanted to obtain sobriety in order to be a mother to her children, attend school, and succeed in life. After hearing petitioner's testimony, the circuit court found that petitioner failed to cooperate with the DHHR, failed to stay in touch with her attorney, failed to stay in touch with the CPS worker, and failed to participate in drug screens. Further, the circuit court noted that petitioner put a very minor elective medical procedure and potential employment opportunities before the custody of the child. The circuit court also found that petitioner continued to abuse drugs. Finally, the circuit court found that there were aggravating circumstances in the case due to petitioner's prior involuntary termination of her parental rights to two older children. Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse. The circuit court also found petitioner seemed to lack the desire to correct the conditions. Finding that the child needed stability and permanency, and that termination was necessary for her welfare, the circuit court denied petitioner's motion for a post-adjudicatory improvement

period and terminated her parental rights.[2] It is from this dispositional order dated August 10, 2017, that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues on appeal that the circuit court erred in terminating her parental rights without first granting her an improvement period. We disagree. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, the record establishes that petitioner failed to demonstrate her ability to fully participate in an improvement period. Throughout the underlying proceedings, petitioner failed to maintain contact with the DHHR and her attorney. She did not participate in random drug screens as ordered by the circuit court, nor did she visit with her child. In fact, petitioner testified that part of the reason she did not keep in touch with her CPS worker was because she traveled out of town for work. Despite knowing the gravity of the circumstances, petitioner chose to attend a medical appointment regarding her carpal tunnel syndrome rather than attend her own adjudicatory hearing. Further, petitioner tested positive for marijuana at the dispositional hearing. Petitioner's argument that she would participate in a plan to address her substance abuse is unpersuasive as petitioner lost her parental rights to two older children based on her substance

---

[2]The father's parental rights were also terminated in the proceedings below. The permanency plan for A.H. is adoption by an aunt.

3

abuse. In fact, petitioner went through prior proceedings for similar circumstances when another child was born exhibiting symptoms of drug withdrawal. Petitioner attempted to enter drug rehabilitation programs but ultimately continued to abuse controlled substances, despite being offered services in the prior proceedings. While petitioner argues that she would successfully complete an improvement period if given the chance, her actions during both the prior and instant proceedings show a complete lack of compliance with what was required of her. Accordingly, we find no error in the circuit court's decision denying petitioner an improvement period.

Moreover, we find no error in the termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected include one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

The record demonstrates that there was no reasonable likelihood that petitioner would correct the conditions of abuse and neglect. This is petitioner's second time participating in abuse and neglect proceedings. Petitioner's prior involuntary termination of her parental rights was due in part to her substance abuse. Knowing that her parental rights had previously been terminated on similar bases, petitioner tested positive at her preliminary and dispositional hearings, the only two times she screened throughout the proceedings. We have previously held as follows:

> [w]here there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ 49-6-1 to -12 (1998) [now West Virginia Code §§ 49-4-601 through 49-4-610]. Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § 49-6-5b(a) (1998) [now West Virginia Code § 49-4-605(a)] is present.

*In re Kyiah P.*, 213 W.Va. 424, 427, 582 S.E.2d 871, 874 (2003) (quoting Syl. Pt. 2, *In the Matter of George Glen B.*, 205 W.Va. 435, 518 S.E.2d 863 (1999)). Clearly, petitioner failed to remedy the same issues that led to her prior involuntary termination of parental rights. Further,

4

petitioner failed to attempt to have her visitation rights reinstated after having them suspended at the adjudicatory hearing due to her failure to cooperate with the DHHR. While petitioner argues that her parental rights should not have been terminated without granting her an improvement period, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based on the evidence outlined above, we agree with the circuit court's finding that there was no reasonable likelihood that petitioner would correct the conditions of abuse and/or neglect and that termination was necessary for the child's welfare.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 10, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: January 8, 2018

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker